**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

In re:

| | |
|---|---|
| **JONATHAN R. THORNE and** | **BANKRUPTCY CASE:** |
| **DARLENE S. THORNE, Debtors** | **09-11763-DWH** |
| | **CHAPTER 13** |

=========================================================

**JONATHAN R. THORNE and**
**DARLENE S. THORNE, Debtors**

**vs.**                                    **Adversary Proceeding Number:**

_____

**PROMMIS SOLUTIONS HOLDING CORPORATION,**
**GREAT HILL PARTNERS, LLC**
**MORRIS, SCHNEIDER AND PRIOR, now known as**
**JOHNSON & FREEDMAN,**
**LENDER PROCESSING SERVICES, INC.,**
**LPS DEFAULT SOLUTIONS, LLC**

## CLASS ACTION COMPLAINT

The plaintiffs individually and on behalf of all other persons similarly

situated bring this complaint against the defendants Prommis Solutions Holding

Corporation, Morris Schneider and Prior, Johnson and Freedman, and Lender

Processing Services, Inc. and LPS Default Solutions, LLC as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.     This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157.  This is a court proceeding pursuant to 28 U.S.C. § 157(b) as to all claims and causes of action asserted in this complaint.

2.     All causes of action are based on the Bankruptcy Code of the United States.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## II.   <u>PARTIES</u>

4.     Plaintiffs are resident citizens of the State of Mississippi and are debtors in Case No. **09-11763-DWH** filed in this Court.

5.     The defendant Prommis Solutions Holding Corporation is a publicly traded company with its principal place of business located at 400 Northridge Road Atlanta, Georgia 30350.  Throughout the balance of this complaint Prommis Solutions will be referred to simply as "Prommis".  This defendants' proposed stock ticker symbol is PRMS.  This Defendant may be served with process by serving its CEO, Denis A. Brosnan, Jr. at the address listed above.

6.     The defendant Great Hill Partners, LLC is a venture capital company who owns the majority interest in Prommis and who is principally responsible for the purchase of law firms by Prommis.  Great Hill Partners, LLC's principal place

of business is One Liberty Square Boston, Massachusetts 02109.  This Defendant

may be served with process by serving one of its Managing partners, who is also a

director of Prommis Solutions, Inc., Matthew T. Vettel at the address listed above.

7.    The defendant Morris, Schneider and Prior was a law firm based

principally in the State of Georgia which is now known as Johnson and Freedman.

This Defendant represents to the public that it provides legal services throughout

the southeastern United States with respect to bankruptcy and foreclosure services

to various national creditors.  This defendant is alleged, upon information and

belief, to be owned by the defendant Prommis Solutions.  Johnson & Freedman's

principal place of business is 1587 Northeast Expressway, Atlanta, Georgia 30329.

This defendant may be served with process by serving its Senior Managing

Partner, Larry W. Johnson, at the address listed above.

8.    The defendant Lender Processing Services, Inc. (hereinafter "LPS") is

a publicly traded corporation that provides mortgage services to various parties in

the mortgage industry.  LPS has its principal place of business at 601 Riverside

Avenue Jacksonville, Florida 32204.  LPS does business in every bankruptcy court

in the United States of America by agent or employee including this Court.  This

company's stock symbol is also LPS.  This defendant may be served by delivering

service of process to Jeffery S. Carbiener, President and CEO, at the address of this

Defendant listed above.

9.     The defendant LPS Default Solutions is a wholly owned subsidiary of

LPS.  LPS Default Solutions has its principal place of business at 601 Riverside

Avenue Jacksonville, Florida 32204.  LPS Default Solutions provides management

of mortgage loans as a subservicer to various national mortgage servicers when a

consumer's loan reaches a predetermined state of default under the contracts

between LPS Default Solutions and its clients the mortgage servicers as will be

more fully set out herein.  LPS Default Solutions may be served by serving process

upon Jeffery S. Carbiener, President and CEO, at the address of this Defendant

listed above.

### III.    FACTUAL ALLEGATIONS

10.    The defendants to this action are creditors' rights law firms and

entities with whom these law firms have undisclosed legal fee-splitting

arrangements.

11.    These undisclosed contractual arrangements result in the illegal

splitting of legal fees between these law firms and the unauthorized practice of law

by the non-law firm entities.

12.    These fee splitting contracts are disguised as "administrative fees,

document review "views", document download fees, document execution fees,

technology facilitation fees, etc."  This language is chosen carefully in an effort to

conceal the true nature of the fee splitting relationship.

13.    These fees are eventually charged backed to the class members by way of the mortgage servicer remitting request for reimbursement to the investors and these amounts are then added to the corporate advance amounts of the class members mortgage loans.

14.    These contractual arrangements are carried out and have been carried out without the knowledge or approval of the Court so that these parties may engage in conduct which allows the defendants to this action to engage in the illegal splitting of legal fees from services performed in the Bankruptcy Court.

15.    By virtue of the contractual agreements between the law firms and the non-lawyer defendants in this action Prommis, Great Hill Partners, LPS and LPS Default Solutions are all engaged in an undisclosed and illegal fee splitting scheme which includes the unauthorized practice of law by these parties.

16.    None of these agreements have been disclosed to the Bankruptcy Court and none of these fee splitting arrangements have been approved by the Bankruptcy Court.

17.    The Plaintiff and the Class allege that these actions violate the Rules, the Code and the Bankruptcy process solely for the unlawful gain of the defendants.

18.    Prommis Solutions, according to their regulatory filings, purchased the "non-legal" assets of the law firms Morris, Schneider and Prior who then

changed their name to Johnson and Freedman.  This law firm regularly appears before this Court.

19.     In exchange for this purchase the law firm entered into an exclusive service agreement with Prommis for a period of 20 years.

20.     Pursuant to the 20 year exclusive contract between Prommis Solutions and Johnson and Freedman there is a specific contractual relationship for the splitting of legal fees between these Defendants.

21.     The defendant Prommis Solutions is not a law firm and is strictly prohibited from engaging in fee splitting with law firms pursuant to well-established rules of ethical conduct.

22.     The law firm defendant is a prolific filer of motions and other pleadings before this Court.  In all of these filings the law firm defendant fails to disclose to the Court, the Trustee, Debtors and their Counsel the existence of their relationship with these non-law firm entities and the existence of the fee-splitting relationship between the Defendants.

23.     The Defendant LPS has a wholly owned subsidiary known as LPS Default Solutions which by its own admission is an industry leader in providing services related to bankruptcy matters to various mortgage servicers throughout the United States.

24.    As part of its provision of these services LPS has developed a national network of law firms including the defendant Johnson and Freedman who have executed contracts with LPS which provide that the law firms will split legal fees with LPS for matters referred to the law firms by LPS. These contracts are called network agreements.

25.    The parties to these network agreements have also executed confidentiality agreements with the intent to never voluntarily disclose to any court the existence of the contract for the referral for a fee of bankruptcy related matters and other foreclosure related matters.

26.    Furthermore the parties intend to never voluntarily disclose the existence and content of these agreements therefore depriving the court, debtors, debtors counsel, and the trustees charged with supervising the bankruptcy system of any knowledge of the existence of the referral for fee relationship between LPS Defaults Services and it network firms such as the defendant Johnson and Freedman.

27.    LPS routinely argues in litigation against it or involving it that the disclosure of its "network agreement" will require LPS to disclose trade secrets to its competitors and argues that Court's should not require the disclosure of these agreements.

28.    The real purpose behind LPS' efforts not to produce its network agreements is to prevent the public disclosure of its illegal fee splitting relationships with the attorneys who have executed network agreements with LPS to protect those attorneys from sanction and to preserve LPS' cash flow from these arrangements.

29.    The effect of these agreements between the Defendants is to create a system which perpetrates a systemic fraud upon the bankruptcy Court and which allows these defendants to harvest fees which are neither reasonable nor lawful and which are undisclosed to the Bankruptcy Court.

30.    Further, the illegal fee splitting relationship with the law firms who have executed these network agreements allows LPS to not charge fees to its mortgage servicer clients for the provision of services related to foreclosures and consumer bankruptcy filings.  This has allowed LPS to capture the lion's share of the market for bankruptcy related mortgage services.

31.    In exchange for entering into these contracts the network firms are then fed through the fire hose of business referrals provided by LPS.  When each network firm that is operating before the Court is disclosed it will become apparent by the number of cases which involve LPS that this illegal contractual arrangement has effectively cornered the market for creditor's work in the bankruptcy Court.

32.     This model has allowed LPS Default to generate billions of dollars in fees since this system was implemented.  All of these fees are illegal.

33.     As a result of the implementation of these illegal, undisclosed fee splitting regimes between and among the defendants in this action the costs of bankruptcy for debtors is substantially increased through inflated fees and charges to debtors.

34.     Additionally, the structure of the contractual arrangements between these parties allows the non-lawyer defendants to engage in the unauthorized practice of law by delegating both legal judgment and legal work to the non-lawyer defendants in violation of law.

35.     This results in the interference with the orderly administration of the bankruptcy process because the non-lawyer defendants are motivated solely to generate more fees which are subject to the illegal fee-splitting arrangement in a constant effort to increase revenues.

36.     The pressure created by the contractual arrangements for the law firm defendants to perform tasks within limited amounts of time and within the directions provided by the non-lawyer defendants creates an environment where the line between lawyer and vendor evaporates and the lawyer must surrender his judgment and his professional obligations to the steady stream of communiqués

emanating from the machine in order to satisfy the firms contractual obligations to its automated masters.

37.     Furthermore, the entire contractual arrangements between the law firms and the non-lawyer defendants constitute a fraud on the bankruptcy court as follows:

    a.  The law firm defendants fail to disclose the existence of the fee-splitting contracts with the non-lawyer defendants;

    b.  The law firm defendants fail to disclose the sharing of fees in bankruptcy court as required by the Rules of Bankruptcy Procedure.

    c.  The law firm defendants claim that the fees that are disclosed to the bankruptcy court are "reasonable fees" when the law firm defendants have full knowledge that they have agreed to perform the services for less than the fees which they seek from the Court.

    d.  The law firm defendants fail to disclose that they have delegated legal services and legal judgment to non-lawyers.

    e.  The law firm defendants fail to disclose that they are facilitating the unauthorized practice of law.

f.  The law firm defendants intentionally misrepresent the fees that they seek are reasonable in order to pay their illegal fee splits with the non-lawyer defendants.

g.  The law firm defendants knowingly fail to disclose the existence of these arrangements to the Bankruptcy Court.

38.    The class representatives filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code in this court in case number **09-11763-DWH**.

39.    The Defendant Johnson & Freedman filed a motion for relief from stay in which it alleged fraudulently that the sum of $600.00 was a reasonable amount for fees and costs in the case.

40.    The affirmative representation in the case was that $450.00 was a reasonable attorney's fee and $150.00 was the cost of the bankruptcy court's filing fee for the motion for relief from stay.

41.    This defendant affirmatively misrepresented to the court that $450.00 was a reasonable attorney's fee with full knowledge that this defendant had actually agreed to perform this service for a much lower sum.

42.    Based on the terms of the standard agreements that exist between Prommis and Johnson and Freedman the law firm defendant has agreed to pay a portion of these fees to Prommis.

43.    Based on the terms of the standard agreements between LPS Default Solutions and the law firm Defendant Johnson and Freedman there exists an agreement to pay $150 of this fee to LPS at the time that the matter is referred to Johnson and Freedman by LPS.

44.    Nevertheless, Johnson and Freedman made the representation to the bankruptcy court that $450 was a reasonable fee for its services with full knowledge of the existence of these arrangements.

45.    Johnson and Freedman made the representation so that the law firm defendant could engage in this fee splitting arrangement with the non-law firm defendants.

46.    This defendant affirmatively misrepresented its reasonable fees in this case with full knowledge that it actually had agreed to perform these services for a much smaller fee.

47.    These actions were taken with full knowledge of the existence of these agreements between the defendants for the illegal splitting of fees.

48.    These actions were taken with full knowledge that the defendants were illegally sharing fees with non-lawyers.

49.     These representations were made without disclosing to the court the existence of any fee splitting arrangement pursuant to Rule 2016(a) of the Bankruptcy Code while under a strict duty to so make this disclosure.

50.     The actions of this defendant and the other defendants in intentionally concealing these fee splitting agreements from the bankruptcy court constitute violation of the rules of the bankruptcy court and constitute a fraud upon the bankruptcy court.

51.     This systemic, recurring and continuing conduct has worked to increase the indebtedness of the class members and to thwart the efficient administration the bankruptcy scheme by imposing undue costs and by engaging in conduct which negatively impacts the efficient administration of the bankruptcy process in violation of law.

52.     At all times material hereto the parties were under an obligation pursuant to the applicable rules of bankruptcy court and Rule 9011 the Rules of Bankruptcy Procedure to make filings to the court which were truthful and accurate and which disclose the material facts.

53.     Further, these defendants' actions in the administration of these agreements constitute the unauthorized practice of law by both LPS Default Solutions and Prommis Solutions.

54.     These parties are both engaged in the unauthorized practice of law in that they exercise control and legal judgment over actions taken by the attorneys in the case and they prepare documents for filing by the attorneys in the case over which the attorneys in the case exercise no independent judgment or control due to the contractual arrangements between the attorneys who are defendants in this action and LPS and Prommis Solutions.

## IV.   CLASS ACTION ALLEGATIONS

55.     The plaintiff brings this action as a class action individually and on behalf of a class which is defined as follows:

> All individuals who have filed a bankruptcy petition under any chapter of the Bankruptcy Code in which these defendants filed, or caused to be filed, a proof of claim, a motion for relief from stay or where these defendants sought and received a plan review fee in which these defendants unlawfully and illegally split fees and sought fees which were not disclosed to the bankruptcy court in violation of the bankruptcy code and controlling law.  Excluded from the class are any employees, officers or directors of any of the defendants or any of their subsidiaries or affiliates, and any of the legal representatives, heirs, successors and assigns of any such employees, officers or directors.

56.     This action may properly be maintained as a class action pursuant to the Bankruptcy Rule 7023 and Rule 23 of the Federal Rules of Civil Procedure.

57.     The members of the class are so numerous that joinder of any individual claims is impracticable.

58.    The Plaintiffs believe that practically every bankruptcy case wherein the defendants Morris, Schneider and Prior now known as Johnson Freedman has been involved contain claims made such as those described in this complaint where illegal and improper fees were charged to debtors in violation of the bankruptcy code and controlling law.

59.    The precise number of class members and their addresses are presently unknown but can be easily obtained from the defendants' files, records and databases.

60.    Class members can be notified of the pendency of the action by mail and/or published notice.

61.    Common questions of law and fact exist as to all members of the class.  These questions predominate over questions affecting individual class members.

62.    These common legal and factual questions include but are not limited to:

a.    The propriety of defendants' practice of filing requests for the approval of fees where the existence of fee splitting relationships have not been disclosed.

b.    The propriety of defendants' practice of requesting attorney's fees without disclosing the existing of fee splitting agreements and seeking an amount

of attorney's fees in excess of the amount of fees that the attorneys actually agree to perform the services for.

c.     Whether the defendants' practices constitute an abuse of the bankruptcy process.

d.     Whether defendants' practices constitute fraud on the court.

e.     The nature of any injunctive relief which should be afforded to the class to prevent the continuation of the wrongful conduct of the defendants.

f.     Whether the defendants should be required to disgorge the benefits obtained from its wrongful conduct.

g.     The nature and amount of civil damages that should be paid.

h.     The nature and amount of civil sanctions that should be assessed.

i.     That nature and amount of punitive damages that should be assessed.

63.     The plaintiffs' claims are typical of the claims of members of the class.

64.     The plaintiffs and each member of the class have been charged fees which have been inflated, which are not reasonable, and which are the result of declarations or certifications of the defendants that the fees were proper and reasonable, which were the result of the defendants failure to disclose the nature and existence of its fee splitting contracts and agreements, and which were the result of the authorized practice of law by the defendants.

16

65.     The class representatives and each member of the class have sustained damages resulting from these defendants illegal and fraudulent practices.

66.     If the defendants are not enjoined from engaging in these illegal and fraudulent practices in the future additional members of the class will suffer.

67.     The plaintiffs are adequate representatives as to class because their interest does not conflict with the interest of the individual members of the class they seek to represent and the plaintiffs have retained counsel who are competent and experienced in complex class action litigation and who have specialized knowledge of the practices of these defendants through their involvement in other litigation involving the same parties or the same conduct.

68.     Further, the plaintiffs and counsel intend to prosecute this action vigorously.

69.     The interest of the members of the class is fairly and accurately protected by plaintiffs and their counsel.

70.     The class action device is superior to any other available means for the fair and efficient adjudication of the claims of plaintiffs in the class.

71.     Absent a class action, most members of the class would not only be unaware of these illegal practices but would find the cost of litigating their individual claims to be prohibitive and would not have an effective remedy to vindicate their rights.

72.     Because of the size of the individual class members claims few class members could afford to seek legal redress for the wrongs which they have suffered due to the defendants' conduct.

73.     Without a class action the class members will continue to suffer harm and the defendants' violation of law will continue to occur and will occur without a remedy.

74.     Furthermore, because of the accumulation of these factors class treatment is the only method by which all class members common claims can be economically and expeditiously adjudicated in one proceeding which will preclude the possibility of multiple trials and inconsistent judgments.

## FIRST CAUSE OF ACTION

75.     Plaintiffs adopt and reallege all prior paragraphs of this complaint as if fully set out herein.

76.     The conduct described by the defendants violates the bankruptcy code and rules and constitutes an abuse of the bankruptcy process.

77.     The plaintiffs and the class invoke the court's inherent powers and the court's powers under Section 105 of the Bankruptcy Code to address the systemic abuse of the bankruptcy code and its rules.

## SECOND CAUSE OF ACTION

78.    The plaintiffs adopt and reallege all prior paragraphs as if set out fully herein.

79.    The defendants' actions violate the bankruptcy code and rules and constitute a fraud on the bankruptcy court which is being perpetrated on a systemic and continuing basis and which is ongoing resulting in damages to thousands of debtors.

80.    The plaintiffs and the class invoke the court's inherent powers and the court's powers under Section 105 of the Bankruptcy Code to address the fraud that has been perpetrated upon the court in this action.

## THIRD CAUSE OF ACTION

81.    The plaintiffs adopt and reallege all prior paragraphs as if set out fully herein.

82.    The plaintiffs and all class members whom they seek to represent are entitled to a civil relief order declaring the defendants' actions and practices described herein violate the bankruptcy code and rules.

83.    The plaintiffs and all class members are entitled to a civil relief order declaring the defendants' actions and practices constitute an abuse of the bankruptcy process.

84.    The plaintiffs and all class members are entitled to a civil relief order declaring the defendants' actions and practices constitute a fraud on the bankruptcy court.

85.    The plaintiffs and all class members are entitled to a civil relief order permanently enjoining the defendants from engaging in said actions and practices in the future with respect to any debtor who is a member of the class described herein.

86.    The plaintiffs and all class members are entitled to a civil relief order declaring defendants' actions and practices violate the bankruptcy code.

87.    The plaintiffs and all class members whom they seek to represent request that the Court invoke its inherent authority and its powers under Section 105 of the Bankruptcy Code to enter appropriate equitable and declaratory Orders and Judgments designed to remedy the abuses described in the Plaintiffs complaint.

## COUNT IV - VIOLATION OF THE AUTOMATIC STAY

88.    The plaintiffs reallege all prior paragraphs as if set out fully herein.

89.    The defendants had actual notice of the plaintiffs' petitions under the bankruptcy code.

90.    The defendants intended their action whereby they collected undisclosed, unapproved, and illegal fees in violation of the bankruptcy code and controlling law.

91.    The defendants' collection of the unauthorized, undisclosed, unapproved, and illegal fees from the plaintiffs in the class constitutes an exercise of control over estate property.

92.    The defendants' collection of these fees from estate property were never disclosed to the court nor authorized by the court.

93.    The defendants' actions violate the automatic stay as defined at 11 U.S.C. § 362(a).

94.    The defendants' actions in collecting the undisclosed, unauthorized unapproved and illegal fees is and was at all times material hereto a willful act.

95.    The plaintiffs in the class allege that they have suffered injury as a result of the defendants' violation of the automatic stay and their exercise of control over estate property.

## COUNT V - CONTEMPT OF THE BANKRUPTCY CODE

96.    The plaintiffs adopt and restate all prior paragraphs as if fully set out herein.

97.    The plaintiffs and class request that the Honorable Court invoke its statutory contempt powers as provided for by 11 U.S.C. § 105(a) to remedy the contemptuous action of the defendants.

98.    The contemptuous actions of the defendants pertaining to and arising out of the defendants' complete and utter disregard for the orderly and systematic administration of the bankruptcy code and the payment of the valid debts of the debtors which is contemplated by Title 11 of the United States Code.

99.    The defendants' contemptuous conduct implicates 11 U.S.C. § 1015(a); 501; 502(a) and (c); 1322(b)(5) and (8) (with respect to Chapter 13 plans); and 1327(a).

100.    Among other things, the defendants' contemptuous conduct consists of:

a.    Adding undisclosed, unapproved, and illegal fees;

b.    Charging and collecting undisclosed, unapproved, and illegal fees;

c.    Exercising control over estate property;

d.    Failing to seek bankruptcy court approval for reasonableness of undisclosed fees;

e.    Failing to subject additional fees to the claim review process;

f.    Thwarting the orderly and systematic payment scheme contemplated by the bankruptcy code;

g.     Affirmatively misrepresenting to the court the reasonableness of the fees sought;

h.     Affirmatively failing to disclose to the court the known existence of the fee splitting agreements;

i.     Failing to seek approval of payment of compensation;

j.     Failing to disclose agreements to pay compensation;

k.     Failing to disclose the existence of agreements which contemplate or implicate the unauthorized practice of law; and

l.     Failure to disclose the existence of fee splitting relationships by law firms with non-lawyers.

101.     By engaging in the conduct set forth above and by charging and collecting unapproved fees and other amounts, and by exercising control over the fixing, charging, and collecting of fees without benefit of a review by debtors, debtors' counsel, and trustees for the court, these defendants have engaged in conduct which thwarts the fair and efficient administration of the bankruptcy process.

102.     This conduct has allowed the defendants to charge and collect unapproved fees without having those fees and charges tested for reasonableness through the mechanisms in place under the bankruptcy code.

103.    The actions of the defendants are contemptuous in that they knowingly and willfully violated the various bankruptcy code provisions.

104.    The defendants had actual knowledge of their conduct and willfully chose to continue the conduct in violation of the bankruptcy code and the court's authority.

105.    The defendants intended these actions for the purpose of being unjustly enriched.

106.    The actions of the defendants have injured the plaintiffs in the class and continue to injure the plaintiffs in the class.

107.    As a result of this conduct the defendants are liable to the plaintiffs and the class for actual damages, punitive damages, and legal fees.

## COUNT VI - CONTEMPT OF FEDERAL RULES OF BANKRUPTCY PROCEDURE

108.    The Plaintiffs reallege all prior paragraphs as if set out here in full.

109.    The plaintiffs request that this Honorable Court invoke its statutory contempt powers as provided for by 11 U.S.C. § 105(a).

110.    The contemptuous action pertains to Rule 2016(a) of the Federal Rules of Bankruptcy Procedure.

111.    Specifically, the defendants have never obtained approval for sharing of fees with non-lawyers.

112.   The defendants have never disclosed to the court the existence of the fee splitting arrangements.

113.   The defendants have represented to the court that their fees were reasonable when the defendants had full knowledge that they agreed to perform legal services for an amount less than the fees they requested from the court.

114.   The defendants have never disclosed to the court their arrangement for compensation amongst themselves which is to be paid from fees that the law firm defendants in this case sought from the court.

115.   These defendants together, acting in concert, have obtained fees from the bankruptcy estates of the class members to the detriment of the debtors and unsecured creditors by paying themselves unapproved fees in contravention of Rule 2016(a).

116.   The defendants by charging and collecting the unapproved, undisclosed, improper and illegal fees are in contempt of Rule 2016(a) of the Federal Rules of Bankruptcy Procedure.

117.   The defendants' actions in filing a request for the subject fees and in particular the standard $450 fee for the "Motion for Relief from Stay" constitute the filing of a false fee petition.

118.   The defendants had actual knowledge of the class members' bankruptcy filings at the time of their actions.

119.   In fact, it was by virtue of the class members' bankruptcy filings that the defendants were actually able to charge these fees.

120.   The defendants intended their actions and engaged in misconduct in collecting these fees with full knowledge of the rules of the bankruptcy procedure including Rule 2016(a).

121.   The plaintiffs and the class have been injured as a result of the defendants' contemptuous conduct.

122.   As a result of the defendants' contemptuous conduct, the defendants are liable to the plaintiffs and the class for actual damages, punitive damages, and legal fees.

## COUNT VII --- BREACH OF THE UNIFORM MORTGAGE COVENANTS

123.   The plaintiffs reallege all prior paragraphs as if set out here in full.

124.   The defendants' actions in seeking these improper fees are a breach of the uniform mortgage covenants which authorizes the defendants to charge fees which are "reasonable and necessary".

125.   The Uniform covenants are in each class members' mortgage and are identical to those published by Fannie Mae and Freddie Mac.

126.   As a direct result of the defendants' actions the class members have been injured and damaged.

127.   The plaintiffs on behalf of themselves and the class members seek all appropriate damages as a result of this breach of contract.

## COUNT VIII ---- UNAUTHORIZED PRACTICE OF LAW

128.   The plaintiffs reallege all prior paragraphs as if set out here in full.

129.   The actions of the defendants and the agreements between the law firms and the non-law firm defendants reveal that the defendants are engaged in the practice of law.

130.   The non-law firm defendants Prommis and LPS Default Solutions, LLC are specifically preparing pleadings and documents which affect an interest in either real estate or contested matters through the preparation of mortgage assignments, chain of title documentation, allonges to promissory notes, affidavits, affidavits of indebtedness and other documents including claims and pleadings in the bankruptcy Court.

131.   Because of the terms of the defendants' agreements and because of the duties and rights set out in these agreements various actions and legal judgments usually reserved for lawyers and the legal profession are specifically delegated to the non-lawyer defendants by contract.

132.   By virtue of these agreements the law firm defendants are assisting the non-law firm defendants in engaging in the unauthorized practice of law in violation of their ethical duties.

133.    As a result of these actions the plaintiffs and the class members have been injured and damaged.

134.    The plaintiffs and the class members seek all damages allowed by law as a result of the wrongful actions of the defendants.

## COUNT IX-- CIVIL CONSPIRACY

135.    The plaintiffs adopt and reallege all prior paragraphs as if set out here in full.

136.    The defendants engaged in an unlawful conspiracy to engage in the unauthorized practice of law, to illegally split fees between lawyers and non-lawyers, to violate the bankruptcy code, rules and procedure, to commit fraud on the bankruptcy court, and to breach the class members' mortgage covenants for the purpose of unlawful gain for each of the defendants.

137.    As a result of this civil conspiracy, civil wrongs were committed against the plaintiffs and the class members.

138.    The motivation for the civil conspiracy was the defendants' appetite for the millions of dollars in fees which they desired to claim by taking advantage of and perverting the bankruptcy process.

139.    As a result of the civil conspiracy the plaintiffs and the class members were injured and damaged.

140.   The plaintiffs and the class members claim all damages allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs and the class pray this Honorable Court enter judgment against the defendants for the following:

I.     The plaintiffs and the class request the court enter an award of compensatory damages which includes a disgorgement of all fees and charges claimed by any of the defendants in any of these matters since the existence of these fee splitting contracts were made.

II.     The plaintiffs and the class request the court enter an award of punitive damages which will punish these defendants and deter others who would consider engaging in the behavior herein described given the enormity of the wrongfulness of the defendants' collective actions.

III.     The plaintiffs and the class request that the court invoke its inherent power and order a refund or credit of any fees charged and posted to class members accounts or collected from class members in connection with any of the illegally sought fees by any of the defendants plus interest, sanctions, and punitive damages if available pursuant to Section 105 as determined by the court.

IV.     The plaintiffs and class members request that the court award all of their attorney's fees and costs in an amount to be determined by the court with an

order requiring the defendant to pay reasonable attorney's fees and costs and

expenses to the plaintiffs and the class and their counsel for prosecution of this

action.

V.   The plaintiffs and class members request any other civil relief

damages the court deems appropriate.

VI.   The plaintiffs and the class request the court enter appropriate

declaratory and equitable orders finding that the defendants' conduct is illegal as

set out herein and enjoining the defendants' conduct in the future.

VII.   The plaintiffs and the class request the court invoke any other relief

that is just and proper or necessary pursuant to Section 105 of the Bankruptcy

Code or any other provision in equity or law required to remedy the conduct and

make the class whole and to prevent the recurrence of the conduct in the future.

VIII.  The plaintiffs and the class request any other relief which the court

deems appropriate.

Done and filed this 30th day of September 2010.

/s/  Jimmy E. McElroy
Attorney for Debtors
3780 S. Mendenhall
Memphis, TN 38115
(901) 363-7283

*/s/ Nick Wooten*___
PHV application Pending

**OF COUNSEL:**

Wooten Law Firm, P.C.
P.O. 3389
Auburn, Al. 36831
(334) 887-3000
Fax: 334 821 7720
nhwooten@gmail.com