# PLAINTIFF'S EXHIBIT NUMBER:

# 4

Case 10-01172-DWH    Doc 76-4    Filed 02/05/11    Entered 02/05/11 16:24:31    Desc
Exhibit 4 to amended complaint    Page 1 of 12

# NETWORK AGREEMENT

THIS NETWORK AGREEMENT ("Agreement") is made between Fidelity National Foreclosure & Bankruptcy Solutions, a division of Fidelity National Title Company, a Delaware corporation ("Fidelity") and Scott J. Humphrey (the "Firm") (collectively the "Parties").

WHEREAS, the Firm wishes to provide to Fidelity and its Clients various legal services that may include matters related to mortgage foreclosures and bankruptcies, as well as other loan default services in Alabama (the "Jurisdiction");

WHEREAS, Fidelity wishes to provide the Firm various administrative services related to mortgage foreclosures, bankruptcies, and other loan default services; and

WHEREAS, each Party wishes to provide these services to the other on the terms and conditions set forth below;

NOW, THEREFORE, the Parties agree as follows:

Section 1.    **Services**. During the term of this Agreement (the "Services Period"), each Party shall provide the other with the services set forth in Exhibit A ("the "Services"). The Parties agree to use their best efforts to provide Services in a timely and professional manner. The Parties may periodically agree in writing to add or delete Services listed in Exhibit A. When Services are added, they shall become "Services" for purposes of this Agreement. All Services provided by the Firm shall be in accordance with applicable security instrument(s), as well as federal, state and local laws and practice. The Firm is responsible for identifying any actual or potential conflict of interest during the term of representation. If the Firm does not perform according to the terms outlined below, Fidelity reserves the right to immediately remove existing files from the Firm in accordance with Section 15 below and discontinue referring new files or other legal matters to the Firm.

Section 2.    **Referrals**. The Firm acknowledges that Fidelity has the right to enter into Network Agreements with other law firms at any time. Fidelity may decide which default matters are to be referred to the Firm ("Referrals") and is not obligated to make a minimum number of Referrals to the Firm. By accepting Referrals, the Firm agrees to the terms of this Agreement and waives any right to assert attorney liens or similar charging liens for payment of services or otherwise against such files. If Fidelity and/or the Client subsequently terminates an individual referral, the transfer provisions of Section 15 below shall apply.

Section 3.    **Fees**.

(a)    The fees for Services performed are set forth in Exhibit B, Exhibit C, and Exhibit D (the "Fees"). These Fees are based upon governmental, quasi-governmental agency, or contractual guidelines. The Parties may mutually agree in writing to amend Exhibits B, C and D. Except as specifically provided in Exhibits B, C and D, all Services shall be performed for flat Fees. If FNMA, FHLMC, FHA, and/or the VA revise their fee guidelines, or a contract is revised, the revised fee guidelines shall become "Fees" for purposes of this Agreement and shall apply to all Referrals on or after the effective date of the revised fee guidelines.

(b) If Exhibits B, C, or D provide for the conversion to an hourly fee, with the exception noted in 3(c) below, such conversion may occur only after Fidelity has given prior written approval.

(c) The Firm may convert to an hourly fee when, in its discretion, it determines that there is a strong likelihood that Fidelity and/or the Client will suffer irreversible loss if immediate action is not taken. If the Firm makes such a determination, it shall seek Fidelity's approval for the conversion within one business day. If Fidelity denies approval, the Firm is nevertheless entitled to bill the emergency work completed to that point on an hourly fee basis.

(d) The Firm recognizes that interest and expenses accrue daily on each Referral. Any penalties assessed by the Client for delays resulting from the Firm's actions or inaction will be paid by the Firm. Without limiting any other provisions of the Agreement, this provision, together with Section 15 below, shall survive termination of the Agreement by either Party.

**Section 4.** **Expenses**. The Firm agrees to advance all fees necessary to meet the costs and expenses required in handling the matters assigned. The Firm agrees that expenses for telephone calls, express or certified mail, postage, copying, faxing, courier charges, electronic research (Lexis, WestLaw, etc.), PACER and/or Banko charges, travel time and related expenses, and mileage are not reimbursable unless required by law. If any of these charges are required by statute, the Firm shall so indicate.

**Section 5.** **Payment for Services**. All invoices for services and costs are to be submitted electronically by the Firm via the NewInvoice invoice processing system, or such other electronic invoice processing system required by the Client, within twenty-four (24) hours after the property is sold (in the case of a foreclosure) or the completion of any other Services. The Firm will be paid on its invoices directly by the Client. In no event shall Fidelity be deemed to be a guarantor of, or otherwise responsible for, any obligation of the Client. Within the thirty (30) days following each Referral, the Firm will be invoiced separately by Fidelity for the administrative fees set forth in Exhibits B, C and D. Said invoices shall be due and payable within thirty (30) days of receipt by the Firm.

**Section 6.** **Insurance**. The Firm agrees to maintain in full force and effect a Professional Liability Policy. The minimum amount of coverage shall not be less than One Million Dollars ($1,000,000.00) per occurrence. The Firm shall provide proof of Insurance to Fidelity on an annual basis and at such other times as may reasonably be requested. The Firm shall immediately notify Fidelity in writing of any changes in coverage, or impending termination, expiration, or lapse of Insurance.

**Section 7.** **Representation of Client**. For purposes of this Agreement, Fidelity's servicer/investor clients (the "Client") shall be considered the mutual clients of both Fidelity and the Firm. Fidelity shall be considered the agent of each servicer/investor Client. The Firm will never be prohibited from directly contacting any Client where, in the professional opinion of the Firm, such contact is necessary. Whenever possible, the Firm shall order title from Fidelity National Title/Chicago Title/Alamo Title/Ticor Title/Security Union Title.

**Section 8.**   **Communication Between Parties.**

(a)   General Communication. The Firm shall update AMOS web or Lenstar, when applicable. The Firm shall provide written or electronic status reports on Referrals as reasonably required by Fidelity. The Firm shall respond to all written or oral requests from Fidelity Account Representatives within one business day. Fidelity reserves the rights and remedies available at law or in equity for the Firm's failure to perform any of its obligations hereunder.

(b)   Updates. Fidelity shall periodically provide the Firm policy and procedure changes in the form of a Fidelity Network Update ("Update"). The Update shall be sent to the Firm either by facsimile or electronic mail. The Update shall be sent to the facsimile number or e-mail address noted in the Notice Section below. The Firm agrees to incorporate these Updates with the existing policies and procedures. The terms of any Update shall apply to the Parties as of the effective date indicated in the Update. The Firm takes full responsibility for disseminating the information to its staff. The Firm shall promptly bring to the attention of Fidelity any issue, claim or dispute which may have important legal, public relations or policy implications for the Client.

**Section 9.**   **Annual Information.** The Firm shall provide Fidelity with the following information on an annual basis: (a) Firm resume; (b) a list of all personnel working on Referrals, along with each individual's title and qualifications; (c) a list of the status of all attorneys and professionals with the Firm, including bar registrations, professional associations, and any disciplinary notices or proceedings; and (d) a letter certifying that the statements in Section 12(i) and (ii) are correct.

**Section 10.**   **Complete Information.** Fidelity shall fully cooperate with the Firm and make a good faith effort to promptly provide the Firm with all relevant information on each Referral. The Firm will review the information provided to ensure that it is sufficient to process each Referral. If the Firm believes that the information is incomplete, the Firm will immediately request the missing information from Fidelity.

**Section 11.**   **Confidentiality.** Privileged information supplied to the Firm by Fidelity shall be kept confidential in accordance with applicable rules of professional conduct. Notwithstanding anything in this Agreement to the contrary, the Firm shall comply with all privacy and data protection laws, rules, and regulations which are or which may in the future be applicable to the Services. The Firm agrees that it will keep confidential and will not use nor disclose to any other party any nonpublic personal information which it receives from or on behalf of the Client in connection with providing Services under this Agreement, except to perform Services under this Agreement. The term "nonpublic personal information" shall have the meanings set forth in Section 509 of the Gramm-Leach Bliley Act (P.L. 106-102)(15 U.S.C. Section 6809) and implementing regulations thereof. These obligations shall survive termination of this Agreement.

**Section 12.**   **Equal Opportunity.** The Parties agree that they shall not discriminate against any employee or applicant for employment because of race, creed, color, age, sex, national origin, marital status, liability for service in the armed forces, disability due to veteran status, status as a veteran of the Vietnam era, or the handicapped. The Parties further agree that they shall comply with all the requirements of the Equal Opportunity Clause set forth in Executive Order 11246, as amended, and its implementing instructions, as well as the Rehabilitation Act of 1973 and the Vietnam Era Veterans' Readjustment Assistance Act of 1974.

The Parties certify they do not and shall not maintain facilities for their employees in a segregated manner or permit their employees to perform their services at any location under their control where segregated facilities are maintained.

    **Section 13.**  **Authorization; Binding Agreement; Good Standing**. The Firm has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement has been duly executed and delivered by the Firm and constitutes a legal, valid and binding obligation, enforceable against the Firm according to its terms. Neither the Firm, nor any partner, member, officer, attorney or employee of the Firm (i) has been or is currently under investigation by any governmental authority or professional organization for any alleged violation or breach of applicable rules or code of professional responsibility, any applicable codes of ethics, or any applicable rules of moral or ethical conduct that are promulgated by a state court, regulatory agency or professional licensing entity, or (ii) has been convicted of or is under investigation for any crime involving moral turpitude. The Firm will comply with all laws, rules and codes described in (i) and (ii) above, and shall immediately notify Fidelity if the Firm, or any of its representatives, is being investigated for or violates any law or applicable rule of professional conduct.

    **Section 14.**  **Notices**. Any notices required by this Agreement shall be in writing and delivered by registered mail, overnight courier service, telex, telegraph or telefax communication, addressed as follows:

In the case of Fidelity:

Fidelity National Foreclosure & Bankruptcy Solutions
1270 Northland Drive, Suite 200
Mendota Heights, MN 55120
Attention: Lawrence C. Dingmann, Jr.
Telefax: (651) 234-3601
E-mail: larry.dingmann@fnfs.net


In case of the firm:
Scott J. Humphrey
3825 Lorna Road
Suite 202
Hoover, AL 35244
Attention: Scott J. Humphrey
Telephone: 205-988-8888
Telefax:  205-987-2221
E-mail:  shumphrey@scotthumphrey.com

or at such other address or persons as a Party may designate in writing.

    **Section 15.**  **Termination**. If a Party breaches any term or condition of this Agreement, or fails to perform any obligation contained in this Agreement, then the non-defaulting Party may <u>immediately</u> terminate this Agreement upon written notice. This Agreement is also terminable upon 30 days written notice by either Party at any time for any reason. If the Firm terminates this Agreement, it will take such reasonable steps as are necessary to protect the interests of both Fidelity and the Client. If the Firm is directed to return any or all

files, the Firm shall do so within three (3) business days from receipt of said request, along with a substitution of attorney / substitution of trustee. All original documents, correspondence, and pleadings shall be returned with the file, along with a copy of the entire file, at no expense to either Fidelity or the Client. In addition, upon completion of the file by substitute counsel, the Firm shall render a final bill for its fee in accordance with the attached Schedule(s) C. The Firm acknowledges that the Firm's legal file, together with all documents, papers and funds held in connection with any of the Services provided, remain the sole property of the Client and must be returned promptly to Fidelity upon termination. In the event the Firm refuses to promptly return said files as requested, the Firm agrees it will be liable for any loss incurred. Such losses include, but are not limited to, per diem interest charges.

      **Section 16.**    **Indemnification**. The Firm agrees to indemnify and hold harmless Fidelity and its Clients ("Indemnified Parties"). The Firm will fully reimburse the Indemnified Parties for any losses, liabilities, penalties, damages, expenses, or other harm or injury which the Indemnified Party may incur or suffer, or which may be asserted by any person or entity, including, but not limited to, reasonable attorney's fees and court costs proximately caused by negligence or intentionally wrongful conduct of the Firm. The Firm also agrees to indemnify the Indemnified Parties for failure to meet any predetermined time frames/deadlines and procedures, as established by the Client, proximately caused by negligence or intentionally wrongful conduct of the Firm.

      (a)    <u>Outside Counsel</u>. The Firm assumes all responsibility for the acts and omissions of any outside counsel or "of counsel" retained by the Firm (for example, counsel retained to assist in litigation or counsel retained to make court appearances in remote counties). The Firm assumes all responsibility for any subcontractor or independent contractor engaged directly by the Firm.

      (b)    <u>Excess Fees</u>. The Firm shall reimburse the Client for any fees which are in excess of the agreed schedule of fees or which exceed any amount allowed by applicable Guidelines. Expenses paid after conveyance, overcharges, or penalties resulting from violations or errors will be the sole responsibility of the Firm.

      **Section 17.**    **Successors and Assigns**. This Agreement is binding upon and inures to the benefit of the Parties and their respective partners, heirs, executors, administrators, representatives, successors, and permitted assigns.

      **Section 18.**    **Assignment**. No rights or obligations of either Party may be assigned to any other person or entity without the prior written consent of the other.

      **Section 19.**    **Miscellaneous**. This Agreement contains the entire understanding of the Parties. No provision may be altered, amended, modified, waived or discharged in any way, except by written agreement of both Parties. If any provision of this Agreement is found to be void or unenforceable, the remainder of this Agreement shall not be affected.

      **Section 20.**    **Termination of Prior Agreement**. This Agreement, including all Exhibits, contains the entire Agreement between the Parties relating to the subject matter hereof. All prior Agreements and all prior negotiations, representations, and communications relating to the same subject matter are superseded by this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement this ____ day of

_____, 200__.

| | |
|---|---|
| **FIDELITY NATIONAL FORECLOSURE & BANKRUPTCY SOLUTIONS, a division of FIDELITY NATIONAL TITLE COMPANY** | **SCOTT J. HUMPHREY** |

_____
Lawrence C. Dingmann, Jr.
Senior Vice President and Division Counsel

By: _____

Its: _OWNER/MGN. PARTNER_

6

| **EXHIBIT A** |
|:---:|
| *FIDELITY NATIONAL FORECLOSURE SOLUTIONS NETWORK SCHEDULE OF SERVICES* |

STATE:   Alabama
FIRM:   Scott J. Humphrey
DATE:   September 26, 2002

SECTION I.   SERVICES PROVIDED BY THE FIRM TO FIDELITY

    A. The Firm shall provide Fidelity and its clients with competent legal representation on all Referrals, including adherence to appropriate standards of professional conduct;

    B. The Firm shall provide Fidelity and its clients with legal representation in a manner consistent with, and in compliance with, Fidelity's standards and procedures;

    C. The Firm shall provide Fidelity and its clients with expertise and knowledge related to the law and legal practice in the Jurisdiction and notifying Fidelity of changes in law related to the law and practices related to the Referrals;

    D. In the state of Alabama, the Firm shall institute foreclosure proceedings in such manner as is required by the applicable investor guidelines, and take all the steps necessary to bring the foreclosure to sale within 90 days after the matter is referred by Fidelity to the Firm, unless either: (i) the borrower files for bankruptcy; or (ii) Fidelity and the Firm mutually agree an event has occurred which has caused a permissible delay in the foreclosure;

    E. The Firm shall prepare and mail all HUD Occupancy letters to the mortgagor, mortgagee and HUD, as applicable;

    F. In connection with bankruptcy Referrals, the Firm shall, upon request by Fidelity: (i) attend 341 hearings; (ii) object to the debtor's plan; (iii) file a motion for adequate protection; (iv) file a motion for relief from stay; (v) process a consent order/stipulation; (vi) prepare and send demand letters; and (vii) process other reasonable requests by Fidelity;

    G. The Firm shall follow these timeframes for bankruptcy Referrals: (i) file a motion for relief from stay within 5 days after receipt of the Referral, unless a particular client requires a different timeframe; (ii) communicate motion filing and hearing results to Fidelity within 24 hours, and email final orders immediately upon receipt; and (iii) obtain relief from stay within 45 days after receipt of the Referral, unless Fidelity and the Firm agree an event has occurred which has caused a permissible delay in the bankruptcy;

    H. In connection with replevin actions, the Firm shall follow the timeframes and communication requirements as provided by Fidelity's standards and procedures; and

    I. The Firm shall update AMOS web or Lenstar, where applicable.

SECTION II.   SERVICES PROVIDED BY FIDELITY TO THE FIRM

    A. Fidelity shall maintain a national network ("Network") of service oriented attorneys who handle Referrals;

    B. Fidelity shall develop and implement marketing services to obtain clients for the Network;

    C. Fidelity shall prepare and deliver complete Referral packages to the Firm;

    D. Fidelity shall monitor the Referrals for compliance with investor and client due diligence guidelines;

    E. Fidelity shall facilitate client communication and provide per event, per loan and portfolio specific reports to clients regarding Referral status;

    F. Fidelity shall maintain loan data and documentation in client files and computer systems;

    G. Fidelity shall facilitate judgment figure calculations, as applicable;

| EXHIBIT A |
|---|
| *FIDELITY NATIONAL FORECLOSURE SOLUTIONS NETWORK SCHEDULE OF SERVICES* |

SECTION II.   SERVICES PROVIDED BY FIDELITY TO THE FIRM

H. Fidelity shall calculate and process the VA 567 form and maintain the responsibility on providing this to the VA in the appropriate timeframes, when applicable;

I. Fidelity shall facilitate the calculations of all bids and provide them to the Firm in a timely manner;

J. Fidelity shall facilitate the ordering of all broker's price opinions and appraisals, and provide them to the appropriate parties, when applicable;

K. Fidelity shall maintain all direct contact with the loan servicing customer and work with the customer on processing appropriate information requested by the mortgagor. Such cases would include working with the collection/loss mitigation department on approval for Deed in Lieu's, short pays and repayment plans and the like;

L. Fidelity shall maintain contact with investors, agencies, mortgage insurance companies and other appropriate signatory offices to obtain executed documents needed in the foreclosure, bankruptcy, or other action;

M. Fidelity shall request all VA cut off extensions if advised by the Firm that we are unable to meet the required timeframes, when applicable;

N. Fidelity shall request all HUD first action extensions if advised by the Firm that we are unable to meet the required timeframe, when applicable;

O. Fidelity shall prepare and track the filing of any Proof of Claim required in an applicable bankruptcy;

P. Fidelity shall oversee the plan review process in connection with an applicable bankruptcy;

Q. Fidelity shall compile figures and financials for any bankruptcy Referral;

R. Fidelity shall assemble the loan documents for any bankruptcy Referral;

S. Fidelity shall compile, scan, and email all necessary information to the Firm;

T. Fidelity shall monitor the status of an applicable motion for relief from stay;

U. Fidelity shall assist in the research of billing inquiries and breakdowns;

V. Fidelity shall order valuations, as applicable;

W. Fidelity shall facilitate the calculation of post petition and contractual reinstatement figures;

X. Fidelity shall approve agreed order terms;

Y. Fidelity shall track and monitor agreed order payments;

Z. Fidelity shall track and review the final bankruptcy order;

AA. Fidelity shall, when requested, close the client's bankruptcy tracking system;

BB. Fidelity shall provide direction to the Firm for institution or reinstitution of a foreclosure action after the appropriate bankruptcy issues have been resolved to permit same, when applicable;

CC. Fidelity shall monitor the status of a replevin action, when applicable;

DD. Fidelity shall endeavor to standardize all processes and procedures requisite to managing defaulted loans from its multi-loan servicer, multi-platform customer base to provide operational and communication efficiencies to the Firm.

## FIDELITY NATIONAL FORECLOSURE SOLUTIONS
## NETWORK FEES FOR SERVICES SCHEDULE FOR *WILSHIRE*

State:   Alabama
Firm:    Scott J. Humphrey
Date:   September 20, 2002

|  | Fees Billed to Client (Client Amount) | Fees Paid by Atty to Fidelity (Admin Fees)** |
|---|---|---|
| **I. Foreclosure Fees*** | | |
| A. Freddie Mac | $500.00 | $125.00 |
| B. FHA | $550.00 | $125.00 |
| C. VA | $550.00 | $125.00 |
| D. Fannie Mae | $550.00 | $125.00 |
| E. Other Loan Types | $550.00 | $125.00 |
| **II. Eviction Fees** | | |
| A. Freddie Mac | $250.00 | $75.00 |
| B. FHA | $350.00 | $75.00 |
| C. VA | Directed by VA | Directed by VA |
| D. Fannie Mae | $350.00 | $75.00 |
| E. Other Loan Types | $350.00 | $75.00 |
| **III. Deed in Lieu of Foreclosure** | | |
| A. Freddie Mac | $200.00 | $50.00 |
| B. FHA | $350.00 | $50.00 |
| C. VA | $350.00 | $50.00 |
| D. Fannie Mae | $350.00 | $50.00 |
| E. Other Loan Types | $350.00 | $50.00 |

\* **NOTE:** For loans not subject to G.S.E. or Government Agency prescribed flat fees, FNMA fee caps will apply.

**IV. Additional Requests**
    File Answer and Monitor Foreclosure When

| | | |
|---|---|---|
| A. Referral is a Subordinate Lien | $250.00 | $50.00 |
| B. Demand Letter (per letter) | $35.00 | $0.00 |
| C. Drafting Missing Documents | $0.00 | $0.00 |
| D. Title Claim Demand Letter | $125.00 | $0.00 |
| E. Lost Note Affidavit | $35.00 | $0.00 |
| F. Nonstandard Per Hour Fee | $125.00 | $0.00 |
| G. All Other Costs | Pass Through | $0.00 |

**V. Bankruptcy Fees**

# FIDELITY NATIONAL FORECLOSURE SOLUTIONS
## NETWORK FEES FOR SERVICES SCHEDULE FOR *WILSHIRE*

|  | Fees Billed to Client (Client Amount) | Fees Paid by Atty to Fidelity (Admin Fees)** |
|---|---|---|
| 1. Objection to Plan/Defense of Proof of Claim | | |
|   a. Objection Resolved | $150.00 | $0.00 |
|   b. File Review | $75.00 | $0.00 |
| 2. Motion for Relief (MFR): | | |
|   a. File Review | $200.00 | $100.00 |
|   b. MFR prepped and filed | $400.00 | $100.00 |
|   c. MFR Complete | $650.00 | $150.00 |
| 3. Additional Motion for Relief (MFR) (same case) | | |
|   a. File Review | $200.00 | $100.00 |
|   b. MFR prepped and filed | $250.00 | $100.00 |
|   c. MFR Complete | $500.00 | $150.00 |
| 4. Agreed Order Default: | | |
|   a. Notice of Default | $0.00 | $0.00 |
|   b. Final Affidavit of Default | $0.00 | $0.00 |
|   c. Ex Parte Order | $0.00 | $0.00 |
| 5. Pre-Approved Hourly Fees (includes cramdowns) | $125.00 | $0.00 |
| 6. Continued Hearings (same case) | $100.00 | $0.00 |

** Firm will not be invoiced for an admin fee on any FNMA or FHLMC file referred pursuant to the FNMA or FHLMC designated counsel program.

Approved and Agreed to by _____/_____

| **EXHIBIT C** |
|---|
| ***FIDELITY NATIONAL FORECLOSURE SOLUTIONS NETWORK MODIFIED FEE SCHEDULE*** |

STATE: Alabama
FIRM: Scott J. Humphrey
DATE: September 26, 2002

If Fidelity provides the Firm with either written or oral notice to stop a foreclosure at any time prior to the sale of the real property being completed, then the Fees paid to the Firm pursuant to Exhibit B shall be modified as outlined in this schedule. **THE FIRM WILL BE BILLED THE FULL ADMINISTRATIVE FEE REGARDLESS OF WHEN THE FORECLOSURE IS TERMINATED OR TRANSFERRED.**

SECTION I.   FEES FOR NON-JUDICIAL FORECLOSURES

| | Event | Modified Fee |
|---|---|---|
| A. | File received by Firm and title ordered/received | 30% of the fee described in Exhibit B |
| B. | Foreclosure documents prepared, service is awaiting publication/posting | 60% of the fee described in Exhibit B |
| C. | Up to and including publication started | 90% of the fee described in Exhibit B |

SECTION II.   FEES FOR JUDICIAL FORECLOSURES

| | Event | Modified Fee |
|---|---|---|
| A. | File in, up to and including title ordered/received | 30% of the fee described in Exhibit B |
| B. | Up to and including complaint drafted/sent/filed | 50% of the fee described in Exhibit B |
| C. | Up to and including service started/completed | 70% of the fee described in Exhibit B |
| D. | Up to and including judgment sent/entered | 90% of the fee described in Exhibit B |

Exhibit C (Reinstatement)                                    09/26/02