UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JONATHAN R. THORNE and
DARLENE S. THORNE, DEBTORS

CASE NO. 09-11763-DWH
CHAPTER 13

JONATHAN R. THORNE and
DARLENE S. THORNE, DEBTORS

LOCKE BARKLEY,
CHAPTER 13 TRUSTEE                                              PLAINTIFFS

VERSUS                                                          ADV. PROC. NO. 10-1172

PROMMIS SOLUTIONS HOLDING CORPORATION;
PROMMIS SOLUTIONS, LLC;
GREAT HILL PARTNERS, LLC;
MORRIS SCHNEIDER AND PRIOR, now known as
JOHNSON & FREEDMAN, LLC;
LENDER PROCESSING SERVICES, INC.;
LPS DEFAULT SOLUTIONS, INC.; and
DANIEL D. PHELAN                                                DEFENDANTS

## OPINION

On consideration before the court are the following pleadings, to-wit:

a.      Motions to dismiss the above captioned adversary proceeding filed by Great Hill Partners, LLC, (Great Hill); Prommis Solutions Holding Corporation, (PS Holding); Prommis Solutions, LLC, f/k/a MR Default Services, LLC, (Prommis Solutions); and Daniel D. Phelan (Phelan).

b.      Motion to dismiss the above captioned adversary proceeding, or, in the alternative, motion for summary judgment filed by Lender Processing Services, Inc., (LPS); and

LPS Default Solutions, Inc., (LPS Default).

    c.    Motion for a protective order and to quash the plaintiffs' discovery filed by LPS and LPS Default.

The court, having considered the foregoing pleadings, hereby finds as follows, to-wit:

## I.

## JURISDICTION

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

## II.

## PROCEDURAL HISTORY

The above captioned adversary proceeding was initially filed on September 30, 2010, by the plaintiffs/Chapter 13 debtors, Jonathan R. Thorne and Darlene S. Thorne (Thornes). An amended complaint was filed thereafter on October 4, 2010, and a second amended complaint on October 11, 2010. Locke Barkley, the Chapter 13 Trustee for the Thornes' bankruptcy estate, (Trustee), was added as a party plaintiff.

Thereafter, Great Hill and PS Holding filed their initial motions to dismiss the adversary proceeding.

On October 28, 2010, LPS and LPS Default filed a motion for summary judgment, or in the alternative, for a more definite statement. The motion was supported by the sworn affidavit of Ross Gloudeman, a Vice President and Division Counsel for LPS, which, in pertinent part,

asserted the following:

> 5. LPS Default offers additional administrative services to which its Clients and Client Firms may elect to subscribe. If selected, LPS Default provides services that include continuous support at any time through the System until a matter is concluded, and administrative support services that track each Client designated "step process." Additional administrative services may also include, if requested by the Client, document assembly functionality for use by Client Firms to access, compile and utilize Client information in representing the Client, among other services.
>
> 6. In this case, LPS did not provide these network agreement services to Johnson & Freedman, and received no payment for any such services. If it did, the firm would have been billed a fixed administrative fee for administrative support provided by LPS throughout the life of each matter in the System. These charges are independent of any legal fees paid by the Client to the Client Firms. The administrative fees are payable by a Client Firm regardless of when, or if, it receives payment of its legal fees by the Client, and LPS' position has consistently been, and remains, that Client Firms who are operating under network agreements on matters for Clients are prohibited from adding the LPS administrative fees to its invoice to Clients for legal fees.
>
> 7. JPMorgan Chase and its subsidiary, Chase Home Financial, LLC, did not have an agreement with LPS under which it sought to utilize administrative services, nor did Johnson & Freeman have a network agreement with LPS to provide these services on files it was handling for Chase. LPS provided no administrative services to Johnson & Freedman, nor does it provide such administrative services to any Client Firm of JPMorgan Chase with respect to those mortgage loans serviced by JPMorgan Chase and its subsidiary, Chase Home Financial, LLC.

The plaintiffs moved to strike the Gloudeman affidavit or, alternatively, requested pursuant to Rule 7056(d), Federal Rules of Bankruptcy Procedure, to conduct additional discovery relative to the LPS and LPS Default motion for summary judgment. Following a hearing on these and the other motions, held on January 21, 2011, the court entered an order, dated February 1, 2011, permitting limited discovery as to the issue of whether LPS or LPS Default provided services that impacted the plaintiffs' bankruptcy case. This order explicitly contained the following language:

B.  That in accordance with Rule 7056(d), the discovery permitted by this Order shall be strictly limited to the sole issue of whether LPS or LPS Default provided services related to the Debtors' bankruptcy case, and that discovery not directly related to the Debtors' case will not be permitted;

By a separate order, the court sustained the motion to dismiss filed by Great Hill and PS Holding without prejudice. The court, however, granted the plaintiffs until February 10, 2011, to file an amended complaint.

On February 5, 2011, the plaintiffs filed their third amended complaint. Shortly thereafter, on February 25, 2011, LPS and LPS Default filed a renewed motion to dismiss, or, alternatively, for summary judgment. Significantly, the plaintiffs have not responded to this motion.

Great Hill, PS Holding, Prommis Solutions, and Daniel Phelan have filed renewed motions to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. The disposition of the Phelan motion will be addressed in a separate opinion and order.

III.

MORTGAGE SERVICING SCENARIOS

Considering the circumstances described in the plaintiffs' third amended complaint, it appears that there are two distinct mortgage servicing scenarios in existence, both of which allegedly involve the unauthorized practice of law and illegal attorney fee sharing prohibited by §504(a), United States Bankruptcy Code, and Rule 2016(a), Federal Rules of Bankruptcy Procedure. On occasion, some of the participants in the scenarios may interact with each other generally for a common purpose. The following is a narrative outline of each scenario, followed by a schematic diagram: (Parenthetically, the court would hasten to add that the perceptions set

4

<u>forth hereinbelow were drawn exclusively from the matters asserted in the aforesaid complaint.</u> The court recognizes that after the presentation of proof, these perceptions could change significantly.)

Scenario #1

Participants:

Lender Processing Services, Inc., (LPS)

LPS Default Solutions, Inc., (LPS Default)

"Fidelity" network of legal firms (law firms)

Mortgage servicer or lender clients (mortgage servicer(s))

    LPS, the parent corporation of LPS Default, contracts and deals directly with the mortgage servicers for routine, non-default servicing activities. LPS has developed a software program called Mortgage Servicing Platform (MSP) which is licensed to the servicers on a fee basis. LPS established LPS Default to contract and deal with the mortgage servicers when the underlying loans become troubled, in default, or are involved in a bankruptcy case.

    LPS Default enters into a Default Services Agreement (DSA) with the mortgage servicers when, as noted hereinabove, the loans enter into a default status. LPS Default does not charge a fee to the mortgage servicers in conjunction with this particular agreement. However, LPS Default has established a network of approximately 200 law firms nationwide which are referred to as the "Fidelity" network. When the mortgage servicers require legal assistance such as the filing and preparation of proofs of claim, the filing of motions seeking relief from the automatic stay, conducting a foreclosure, or prosecuting an eviction, they are required by the DSA to utilize one of the network law firms. For this type work, the mortgage servicers pay the selected law

5

firm a fee commensurate with the services provided. On many occasions, these fees are recovered by the servicers with the assistance of the law firms who charge and collect from the borrowers and/or the debtors in bankruptcy.

As a part of this arrangement, LPS Default bills the network law firms for administrative support charges. The plaintiffs' complaint asserts that the payment of these administrative support charges by the law firms to LPS Default is not disclosed and constitutes, in actuality, an illegal fee sharing between the law firms and LPS Default. This practice also forms the basis of the complaint's charge that LPS Default is engaged in the unauthorized practice of law.

To stimulate increased production, LPS Default also pays incentive awards, which are referred to as an attorney performance rating (APR), to the law firms when their services are undertaken on an expedited basis.

The complaint also contains allegations that LPS Default and Prommis Solutions, LLC, an entity discussed in Scenario #2, have a relationship that closely resembles the relationship that LPS Default has with its network law firms. The plaintiffs assert that Prommis Solutions, LLC, pays LPS Default referral fees, ostensively for work that Prommis Solutions, LLC, farms out to the four law firms that were acquired by Prommis Solutions Holding Corporation, which is also discussed in Scenario #2. This interaction is allegedly another example of the unauthorized practice of law and illegal fee sharing being perpetrated by these defendants.

# Scenario #1

## Participants:

Lender Processing Services, Inc. (LPS)
LPS Default Solutions, Inc. (LPSDefault)
"Fidelity" Network (network legal firms)
Mortgage servicers & lenders



<u>Scenario #2</u>

<u>Participants</u>:

Great Hill Partners, LLC, (Great Hill)

Prommis Solutions Holding Corporation, (PS Holding)

Prommis Solutions, LLC, f/k/a MR Default Services, LLC, (Prommis Solutions)

Daniel D. Phelan, an attorney with McCalla Raymer, LLC, and also Chairman or Vice-Chairman of the Board of Prommis Solutions Holding Corporation (Phelan)

Johnson & Freedman, LLC, f/k/a Morris, Schneider, & Prior, attorneys

McCalla Raymer, LLC, attorneys (a non-defendant in the Thorne proceeding)

2 unidentified law firms

Mortgage servicer or lender clients (Mortgage servicer(s))

Great Hill is the parent corporation of both PS Holding and Prommis Solutions. According to the complaint, Great Hill orchestrated the purchase by PS Holding of all of the "non-legal" assets of four law firms, Johnson & Freedman, LLC, f/k/a Morris, Schneider, & Prior; McCalla Raymer, LLC; and two firms that were unidentified. These "non-legal" assets were described as "everything in the law firms except the lawyers and their law licenses."

In this scenario, a reading of the complaint leads the court to presume that Prommis Solutions performs responsibilities that would be similar to those performed by a combined LPS and LPS Default in Scenario #1. As such, Prommis Solutions contracts with and deals with the mortgage servicers for routine servicing assistance, as well as, where the underlying loan has become troubled, has gone into default, or has become a part of a bankruptcy case. The four law firms, acquired by PS Holding, perform functions similar to those network law firms in Scenario

7

#1. An extremely troubling issue, which may ultimately be clarified by the presentation of evidence, is summed up in this question: If only the non-legal assets were acquired in the purchase of the law firms, who is now performing the legal work - paralegals and clerical staff? (The court has observed that in the Thorne bankruptcy case, the offending motion for relief from the automatic stay was filed and prosecuted by Karen A. Maxcy, an attorney with the Johnson & Freedman, LLC, law firm who is licensed to practice law in the State of Mississippi, Bar #8869.)

When legal fees are paid by the mortgage servicers to the law firms, Prommis Solutions is then apparently compensated for services that it provides to the law firms through administrative support fees in a similar manner as LPS Default is paid by its network law firms. According to the plaintiffs, this constitutes the unauthorized practice of law by Prommis Solutions and the illegal sharing of attorney fees.

As set forth earlier, the complaint also asserts that Prommis Solutions pays a referral fee to LPS Default so that it can interact with the LPS/LPS Default system. When this occurs, the plaintiffs assert that the legal work is either being performed by Prommis Solutions, or one of the four acquired firms, which may or may not still employ licensed lawyers.

The allegations made by the plaintiffs in their complaint are certainly serious accusations against the defendants. Whether these allegations can be established at trial by credible evidence remains to be seen.

# Scenario #2



IV.

## MOTIONS TO DISMISS

Since the motions to dismiss were filed by Great Hill, PS Holding, Prommis Solutions, and Phelan pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the court must construe the adversary proceeding complaint liberally in favor of the plaintiffs as the non-moving parties and assume the truth of all pleaded facts. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002); *Frank v. Delta Airlines, Inc.*, 314 F.3d 195 (5th Cir. 2002); and *In Re Harris*, 297 B.R. 61, 64 (Bankr. N.D. Miss. 2003).

This court is certainly mindful of the most recent standard enunciated by the United States Supreme Court in order for a complaint to survive a Rule 12(b)(6) motion to dismiss, that is, the complaint must contain sufficient factual allegations to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The "plausibility" test is met where the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the asserted misconduct. *See, Darby v. Southern Care, Inc.*, 2010 WL 4168671 (N.D. Miss. Oct. 19, 2010).

Insofar as the defendants Great Hill, PS Holding, and Prommis Solutions are concerned, the court has analyzed the plaintiffs' third amended complaint and has summarized the applicable factual allegations in Mortgage Servicing Scenario No. 2. Construing the complaint allegations liberally and assuming the truth of all pleaded facts, the court is of the opinion that the third amended complaint states causes of action against these three defendants upon which relief can be granted in keeping with the standard enunciated in *Twombly and Iqbal*. Therefore, the

motions to dismiss filed by Great Hill, PS Holding and Prommis Solutions are not well taken and will be overruled by a separate order to be entered contemporaneously herewith. The motion to dismiss filed by the defendant Phelan will be addressed in a separate opinion and order.

V.

MOTION FOR SUMMARY JUDGMENT

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

.

The motion for summary judgment filed by the defendants, LPS and LPS Default, was supported by the sworn affidavit of Ross Gloudeman. Relevant portions of that affidavit, which were set forth verbatim hereinabove, have not been challenged by the plaintiffs and, for purposes of the subject motion, would be considered undisputed.

Although the court has constructed and described Mortgage Servicing Scenario No. 1 from the complaint's allegations, which clearly include LPS and LPS Default, LPS and LPS Default had no involvement whatsoever with the bankruptcy case filed by Jonathan and Darlene Thorne. Consequently, the court determines that there are no genuine material issues of fact remaining in dispute regarding LPS and LPS Default insofar as the Thornes are concerned. As such, the motion for summary judgment filed by these two defendants in this proceeding is well taken and will be sustained.

The court is well aware that other adversary proceedings have been filed in this district by debtors whose mortgage loans could well have been impacted by the services provided by LPS and LPS Default. The court's determination in this proceeding will likely have little effect on these other proceedings because the factual circumstances and the parties involved could vary considerably.

VI.

MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFFS' DISCOVERY

The court's decision in sustaining the motion for summary judgment filed by LPS and LPS Default effectively dismisses these two defendants from the adversary proceeding initiated on behalf of Jonathan and Darlene Thorne. Consequently, the discovery propounded to LPS and LPS Default on behalf of the plaintiffs is now moot. Responses to discovery propounded to the

11

other defendants who still remain active in this proceeding must be addressed by those defendants.

A separate order will be entered by the court dismissing as moot the LPS and LPS Default motion for a protective order and to quash the plaintiffs' discovery.

This the 15th day of June, 2011.

                                                 DAVID W. HOUSTON, III
                                                 UNITED STATES BANKRUPTCY JUDGE