UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JONATHAN R. THORNE and
DARLENE S. THORNE, DEBTORS          CASE NO. 09-11763-DWH
                                     CHAPTER 13

JONATHAN R. THORNE and
DARLENE S. THORNE, DEBTORS

LOCKE BARKLEY,
CHAPTER 13 TRUSTEE                         PLAINTIFFS

VERSUS                       ADV. PROC. NO. 10-1172-DWH

PROMMIS SOLUTIONS HOLDING CORPORATION;
PROMMIS SOLUTIONS, LLC;
GREAT HILL PARTNERS, LLC;
MORRIS SCHNEIDER AND PRIOR, now known as
JOHNSON & FREEDMAN, LLC                  DEFENDANTS

OPINION

On consideration before the court are the following pleadings, to-wit:

      a.      Motion for summary judgment filed by the defendant, Johnson & Freedman, LLC,

("J&F").

      b.      Motion for summary judgment filed by the defendants, Prommis Solutions

Holding Corporation, ("Prommis Holding"), and Prommis Solutions, LLC, ("Prommis

Solutions").

      c.      Motion for summary judgment filed by the plaintiffs, Jonathan R. Thorne and

Darlene S. Thorne, debtors, ("Thornes"), and Locke Barkley, Chapter 13 trustee, ("trustee").

      Appropriate responses, replies, and memoranda of law were filed by each of the parties.

A separate opinion and order was recently entered concerning the motion for summary judgment filed by the defendant, Great Hill Partners, LLC. Previous orders were entered dismissing the defendants, Lender Processing Services, Inc.; LPS Default Solutions, Inc.; and Daniel D. Phelan from this adversary proceeding.

The court, having considered the foregoing pleadings, hereby finds as follows, to-wit:

I.

## JURISDICTION/COMPLAINT SUMMARY

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

In a previous opinion, dated June 15, 2011, this court set forth a procedural history related to this adversary proceeding, as well as, discussed the mortgage servicing scenario that involved Great Hill Partners, LLC, Prommis Holding, Prommis Solutions, and J&F. Certain modifications and/or refinements to the mortgage servicing scenario addressed in that opinion will be set forth hereinbelow.

The plaintiffs' complaint primarily focuses on charges that the defendants illegally shared attorney fees and engaged in the unauthorized practice of law. The complaint set forth the following counts:

1.      Abuse of the bankruptcy process;

2.      Fraud on the court;

3.      Declaratory and injunctive relief;

4.      Violation of the automatic stay;

2

5.      Contempt of the Bankruptcy Code;

6.      Contempt of the Federal Rules of Bankruptcy Procedure;

7.      Breach of the Uniform Mortgage Covenants;

8.      Unauthorized practice of law;

9.      Civil conspiracy;

10.     Violation of 18 U.S.C. § 155 Proscription Against Fixing Attorney's Fees in a
        Bankruptcy Proceeding.

II.

## AGREED ORDER, FEBRUARY 3, 2010

The alleged unlawful sharing of fees in this proceeding is directly related to an Agreed

Order entered by this court on February 3, 2010.  The order was dispositive of a motion for relief

from the automatic stay which had been filed by J&F on behalf of Chase Home Finance, LLC,

("Chase"). The order restructured the Thornes' Chapter 13 plan payments and provided that the

automatic stay would be lifted if the Thornes became delinquent in their monthly payments for

more than 60 days.  Because the underlying promissory note, executed by the Thornes when their

loan transaction was originated, included a provision that allowed the assessment of collection

costs, an attorney's fee in the sum of $600.00 was allowed by the court to compensate Chase for

filing the motion for relief.  Coincidentally, the Agreed Order was approved for entry by Karen

A. Maxcy, a J&F attorney licensed in the State of Mississippi, who represented Chase; Jimmy E.

McElroy, the attorney representing the Thornes; and W. Jeffrey Collier, the attorney representing

the Chapter 13 trustee.  Because the $600.00 fee included the statutory filing fee, the court is of

3

the opinion that the amount is clearly reasonable for the services rendered.  There was no appeal

from this order.

The court has been advised that the $600.00 attorney fee is being collected from the

Thornes and paid to Chase over time through the Chapter 13 plan distributions.  As will be seen

in the discussion that appears later in this opinion, J&F sent an invoice to Chase requesting a

payment of $800.00 for the services that it rendered in filing the motion. Later, J&F paid

Prommis Solutions $506.96 for paralegal and support services that it had outsourced to Prommis

Solutions.  According to the plaintiffs' complaint, the interaction and relationship between J&F

and Prommis Solutions underpins the allegations of the unauthorized practice of law and the

illegal sharing of attorney fees.

III.

DEFENDANTS' AGREEMENTS

The Prommis Solutions mortgage servicing scenario, set forth in this court's previous

opinion, was drawn from allegations set forth in the plaintiffs' complaint.  Now that additional

information has been made available to the court through the discovery processes, the court has a

much clearer understanding of this scenario, particularly the roles of Prommis Holding, Prommis

Solutions, and J&F.

The cover page to the Contribution Agreement, offered as Exhibit A to the plaintiffs'

response to J&F's motion for summary judgment, identifies the original parties as follows:

Morris, Schneider & Prior, LLC; MR Default Services, LLC; and MR Processing Holding

Corporation.  These parties are now known respectively as J&F, Prommis Solutions, and

Prommis Holding.  Prommis Solutions is a wholly owned subsidiary of Prommis Holding.

4

Although the procedural steps establishing the defendants' contractual relationships could best be described as confusing, when all of the dust settled, Prommis Solutions apparently became the owner of all of the non-legal assets of J&F's predecessor, Morris, Schneider & Prior, LLC.  In addition, a vast majority of the non-attorney employees became employees of Prommis Solutions.  There were numerous ancillary agreements executed between the parties which are set forth as follows:

    a.      Services and Technology Agreement - Prommis Solutions and J&F entered into an agreement by which Prommis Solutions would provide bankruptcy and foreclosure support services for a term of 20 years.

    b.      Bill of Sale - J&F conveyed and transferred the Contributed Assets to Prommis Solutions.

    c.      Assignment and Assumption Agreement - J&F assigned, sold, and transferred to Prommis Solutions all of its "rights, title, benefits, privileges and interests in and to the Contributed Assets..."

    d.      Intellectual Property Assignment - J&F assigned its intellectual property rights to Prommis Solutions.

    e.      Sublease Agreement - J&F agreed to sublease an office building in Atlanta, Georgia, to Prommis Solutions for a term of 60 months.

    f.      Assignment of Lease - J&F assigned a lease to Prommis Solutions for office space in Raleigh, North Carolina.

    g.      License Agreement - Prommis Solutions agreed to license a portion of the office space in the Atlanta office building to J&F for a term of 60 months.

    h.      Non-Compete Agreements - Each of the five former law partners separately agreed not to participate in businesses "which engage or which propose to engage in the provision of non-legal bankruptcy or foreclosure services."

    i.      Consulting Agreement - Thomas E. Prior was engaged as an independent contractor with Prommis Solutions for a term of 30 months.

j.      Release Agreement - This was a release and indemnification agreement between J&F, Prommis Holding, and Prommis Solutions regarding certain claims and liabilities.

Relevant to this proceeding, the aforementioned agreements established a relationship where J&F outsourced paralegal and support services from Prommis Solutions. Prommis Solutions provided J&F with these services to assist in the representation of J&F's mortgage servicing clients. As discerned from the materials presented in support of the various motions for summary judgment, the court is of the opinion that the scope of these services is identical to the services that would be provided by "in house" paralegals and support staff. The J&F/Prommis Solutions relationship is a unique, although not exclusive, business model which is an innovative departure from the traditional practice of utilizing "in house" employees for these tasks.

The plaintiffs point out that the Form S-1 Registration Statement, filed with the Securities and Exchange Commission by Prommis Holding, contains the following language:

Description of its services - . . . "Foreclosure and Bankruptcy Services, whereby we prepare foreclosure documentation, publications and notices and bankruptcy court filings for attorney review . . . ;" (emphasis supplied)

That Prommis Holding began operating . . . when it "acquired the mortgage default resolution processing operations of McCalla Raymer, LLC" and that it "acquired certain default resolution processing operations and related employees of three additional law firms."

In that same document, the "Risks Related to Our Business" section provides the following:

A substantial portion of revenue is dependant on relationships with a limited number of law firms wherein Prommis has "long-term exclusive contracts with these firms . . ."

What constitutes the practice of law is "not clearly established, varies from state to state, and depends on authorities . . . Many states define the practice of law to

6

include . . . the preparation of legal documents or the preparation of court documents for another person."

Laws, regulations, and codes of ethics related to the practice of law pose certain risks. Moreover, that (a) certain authorities may challenge services as constituting the unauthorized practice of law; and (b) the service agreements with law firms "could be deemed to be unenforceable if a court were to determine that the agreements constituted an impermissible fee sharing arrangement.

Obviously, the Securities and Exchange Commission Registration Statement anticipates, as well as, discloses both issues that are addressed in the plaintiffs' complaint. It is now incumbent on this court to determine whether illegal fee sharing has occurred and whether the current arrangement between J&F and Prommis Solutions constitutes the unauthorized practice of law.

Insofar as Prommis Holding is concerned, the plaintiffs' complaint initially indicated that it was the entity that had acquired the non-legal assets from J&F for the payment of $26.3 million in cash plus the issuance of 8,333 shares of Prommis Holding preferred stock. However, now these assets are held by Prommis Solutions, and the former J&F non-lawyer employees are apparently Prommis Solutions employees. Consequently, unless the court is completely mistaken, Prommis Holding is currently a passive entity which wholly owns its subsidiary corporation, Prommis Solutions.

IV.

J&F AFFIDAVIT

In support of its motion, J&F submitted an affidavit by Mark A. Baker, the Managing Bankruptcy Partner of J&F, which provides the following factual information:

7

- J&F received the file in April, 2009, from the loan servicer via Vendorscape, a secure, computerized delivery system where the lender/servicer and legal professionals share information and communicate.

- At the time the proof of claim was filed, the debtors were current with Chase.

- On December 11, 2009, J&F received transmittal from Chase through Vendorscape that the debtors were in arrears under their Chapter 13 plan and requesting that a motion for relief from the automatic stay be filed. The assignment was given to Karen Maxcy at J&F on December 14, 2009.

- On December 14, 2009, Chase filed, through J&F as its counsel, a Motion for Relief from Stay and for Abandonment ("Motion to Lift") for failure to pay post-petition, post-confirmation mortgage payments.

- On February 3, 2010, an agreed order was entered between the debtors and Chase, adjudicating, among other things, the following . . .

> the debtors' Chapter 13 plan was amended by the Agreed Order "to include the total amount of $5,096.45, which sum consists of monthly payments for October, 2009 through February, 2010, each at $899.29 and $600.00, which sum consists of the attorney's fees and costs incurred in bringing the Motion to Lift" and to include in the Chapter 13 plan all future payments to Chase, which were to thereafter be made through the Trustee's office.

- The Agreed Order was signed as "agreed to" by counsel for debtors, J&F as counsel for Chase and as "no opposition" by the Trustee.

- The practice followed by J&F in the debtors' case on behalf of its client, Chase, is consistent with the practice followed by J&F and approved by this court in nearly 100 matters since 2005. See Exhibit "1" attached hereto [which is a list of cases wherein agreed orders were entered awarding $600 in attorney's fees and costs].

- All agreements, contracts and business relationships with any of the remaining co-defendants are legitimate business relationships and transactions intended to be in full compliance with applicable rules, procedures and law for legitimate business purpose.

- The relevant contracts with the Prommis defendants are attached as Exhibit "3". J&F does not have any contracts or agreements with Great Hill.

8

- J&F did not share any portion of its attorney's fees collections received for its services on behalf of Chase in the debtors' case with LPS, LPS Default, Great Hill, Prommis Solutions, Prommis Holding, or Mr. Phelan.

- While J&F pays Prommis Solutions for its services which are in the nature of paralegal and administrative services, J&F remits payment for those services pursuant to the attached contracts in the same manner as any other vendor provider to J&F—out of gross revenues of the firm.

- J&F pays Prommis Solutions for its services on a monthly basis in a bulk, flat-fee based billing, the timing of which is not contingent in any way to the billing by J&F to its clients for legal services.

- A true and correct copy of the rate schedule pursuant to the Services Agreement with Prommis Solutions effective at the time of the Motion to Lift and the invoice from Prommis Solutions to J&F dated February 28, 2010 is attached hereto as composite Exhibit "4".

- J&F paid Prommis Solutions $506.96 for its administrative assistance services in connection with the Motion to Lift.

- J&F's obligation to pay Prommis Solutions for these services was not contingent in any way on whether Chase was actually awarded or received reimbursement of its attorneys' fees and costs paid to J&F. J&F's payment of the invoices from Prommis Solutions to J&F is not contingent on whether or from what source J&F is paid for legal services by J&F clients.

- J&F maintains control of all legal matters assigned to it by its clients, including Chase in the debtors' case.

- To the extent the Prommis defendants provide services to J&F in connection with J&F's representation of its clients in J&F's ordinary course of business, J&F provides Prommis Solutions with all templates for completion. See Exhibit "3" attached hereto, Services and Technology Agreement . . . § 2.2, p.4.

- Prommis Solutions is bound by the Services Agreement not to change any J&F templates used to complete pleadings for J&F's review and approval.

- J&F reviews and approves all pleadings and filings before they are filed with the court on behalf of J&F clients.

- In the debtors' case, Prommis Solutions prepared the draft of the motion, which Karen Maxcy at J&F approved for filing on December 14, 2009.

- On January 7, 2010, a Prommis Solutions paralegal contacted debtors' counsel's office to ascertain the debtors' intention regarding the Motion to Lift. Prommis Solutions relayed this information via the secure communications network to Chase and via the secure case management system to J&F.

- Prommis Solutions prepared a draft order consistent with the parties' understanding and J&F templates and forwarded the draft to debtors' counsel and the Thorne Trustee. Karen Maxcy approved the agreed order for circulation, signatures, and submission to the court. Thereafter, Prommis Solutions imaged the Agreed Order to the court for J&F.

- J&F did not pay any co-defendant herein a referral fee for receipt of the file from Chase. In fact, in the debtors' case, J&F charged Chase more for its services ($800) than Chase requested reimbursement for from this court ($600).

- J&F did not split this fee with any of the defendants.

- Chase was responsible for payment of J&F's invoice regardless of whether the debtors were ordered to, or actually reimbursed Chase.

- J&F did not sell the law firm to the Prommis defendants. Neither LPS, LPS Default, Great Hill, Prommis Solutions, Prommis Holding nor Mr. Phelan hold any ownership interest in J&F. J&F attorneys continue to perform all legal work for the law firm and are employed and paid solely by J&F from J&F's revenues.

- J&F has not received any payment from the Thorne Trustee paid on the debtors' behalf for attorneys' fees Chase incurred in the debtors' case.

Although some of these statements in Baker's affidavit are factual conclusions which will ultimately have to be decided by this court, the balance of the statements are factually accurate and are not disputed by the parties.

V.

DISCUSSION

A. Overview

In their motion for summary judgment and supporting memorandum, Prommis Holding and Prommis Solutions (hereinafter referred to occasionally for convenience as "Prommis defendants"), assert that there is nothing unethical about a lawyer or a law firm outsourcing support services, provided that the lawyers meet all of the ethical obligations to supervise the work and to render competent services to the client. They recognize that traditionally these type services are performed "in house," but argue that there is no ethical requirement that the services be performed "in house." The Prommis defendants also indicate that many bar associations have expressly approved the practice of law firms outsourcing support services to third party vendors just as J&F did with Prommis Solutions. In their memorandum, they include American Bar Association Formal Opinion 08-451, as well as, several opinions adopted by state and local bar associations, all of which support their position. The Prommis defendants contend that since outsourcing is approved, that the payment in the ordinary course of business for the outsourced services should not be considered the illegal sharing of attorney fees.

The Prommis defendants state that Prommis Solutions followed a standard set of directed tasks in preparing the motion for relief. Further, that § 2.2 of the Services Agreement, entered into between J&F and Prommis Solutions, required Prommis Solutions to use forms provided by J&F, and prohibited Prommis Solutions from making any substantive changes to these forms without the prior review and written consent of a J&F attorney. The Prommis defendants confirmed the statements made by Mark Baker in his affidavit that J&F attorney Karen Maxcy supervised,

11

reviewed, and approved all of the work before directing that it be filed. Indeed, Maxcy executed the

Agreed Order along with the debtors' attorney and the attorney representing the Chapter 13 trustee.

The Prommis defendants provided a timeline for the billings and payments that were made relative

to the filing and resolution of the motion for relief from the automatic stay as follows:

> February 24, 2010 - J&F submitted its invoice to Chase for $800.00.

> February 26, 2010 - Chase remitted a payment to J&F in the sum of $800.00. (The
> plaintiffs listed this date as March 26, 2010, but the February 26 date is supported by
> a copy of the check submitted by the Prommis defendants.)

> February 28, 2010 - Prommis Solutions billed J&F $506.96 for its paralegal and
> support services.

> May 17, 2010 - J&F paid Prommis Solutions $506.96.

None of the aforementioned payments came from the Thornes' bankruptcy estate. As noted

earlier, the court has been advised that the Chapter 13 trustee has been paying Chase the $600.00 fee

awarded by the court through the Chapter 13 plan installments.

The Prommis defendants point out that J&F was contractually obligated pursuant to the

Services Agreement to pay Prommis Solutions regardless of whether Chase paid J&F pursuant to

its invoice or whether Chase received reimbursement for its fees and costs. In addition, they assert

that J&F was obligated to pay Prommis Solutions the same flat rate regardless of the amount of the

fee the court might allow Chase to recover pursuant to the terms of the loan documentation executed

by the Thornes.

The court has already concluded that the amount of the attorney's fee related to the motion

for relief from the automatic stay was reasonable. The proceeding satisfied the requirements of due

process. The Chapter 13 trustee and the debtors are precluded from attacking the Agreed Order and

12

the fee assessment because of the doctrines of judicial estoppel and collateral estoppel since their

respective attorneys approved the entire procedure.

### B. Rule 2016(a)

Rule 2016(a), Federal Rules of Bankruptcy Procedure, is one of the legal authorities that the

court will consider in determining this matter. It provides as follows:

> (a) APPLICATION FOR COMPENSATION OR REIMBURSEMENT.  An entity
> seeking interim or final compensation for services, or reimbursement of necessary
> expenses, from the estate shall file an application setting forth a detailed statement
> of (1) the services rendered, time expended and expenses incurred, and (2) the
> amounts requested.  An application for compensation shall include a statement as to
> what payments have theretofore been made or promised to the applicant for services
> rendered or to be rendered in any capacity whatsoever in connection with the case,
> the source of the compensation so paid or promised, whether any compensation
> previously received has been shared and whether an agreement or understanding
> exists between the applicant and any other entity for the sharing of compensation
> received or to be received for services rendered in or in connection with the case, and
> the particulars of any sharing of compensation or agreement or understanding
> therefor, except that details of any agreement by the applicant for the sharing of
> compensation as a member or regular associate of a firm of lawyers or accountants
> shall not be required.  The requirements of this subdivision shall apply to an
> application for compensation for services rendered by an attorney or accountant even
> though the application is filed by a creditor or other entity.  Unless the case is a
> chapter 9 municipality case, the applicant shall transmit to the United States trustee
> a copy of the application.

Fed. R. Bankr. P. 2016(a) (emphasis supplied).

Rule 2016(a) contains the requirement that the applicant must be seeking compensation or

reimbursement of necessary expenses "from the estate." *See Jones v. Walter Mortg. Co., et al. (In*

*re Jones)*, 422 B.R. 58, 62 (Bankr. N.D. Miss. 2009).  While the payment of the $600.00, approved

by the court, was to be made from the Thornes' bankruptcy estate, it was to be paid to Chase as

provided in the mortgage loan documentation. *See Rice-Etherly v. Bank One, et al. (In re Rice-*

*Etherly)*, 336 B.R. 308, 315 (Bankr. E.D. Mich. 2006), where the court held that the attorney fees

13

were payable to the creditors and not to the law firm that had filed the pleading. In this proceeding, Chase paid J&F for its services in the sum of $800.00, which was not dependent on Chase collecting anything from the bankruptcy estate. Over time, Chase will recoup the $600.00 fee allowed by the court. Consequently, the fee paid to J&F, and the subsequent payment to Prommis Solutions were not "from" the Thornes' bankruptcy estate.

The other question that arises as a result of the language found in Rule 2016(a), is whether there should have been some disclosure as to whether the compensation was being shared with another entity. In this proceeding, both J&F and Prommis Solutions are adamant that there was no fee sharing involved. Prommis Solutions states that pursuant to the Services Agreement, it was to be paid by J&F for its paralegal and support services regardless of whether J&F was compensated by Chase. This is identical to the relationship that J&F had with Chase, i.e., J&F's payment for services was not contingent on Chase's receipt of compensation from the bankruptcy estate. The court has seen nothing to dispute the statements made in Baker's affidavit to the following effect:

> While J&F pays Prommis Solutions for its services which are in the nature of paralegal and administrative services, J&F remits payments for those services pursuant to the attached contracts in the same manner as any other vendor provider to J&F–out of the gross revenues of the firm.

> J&F pays Prommis Solutions for its services on a monthly basis in a bulk, flat-fee based billing, the timing of which is not contingent in any way to the billing by J&F to its clients for legal services.

Although others could certainly disagree, this court does not believe that the scenario described hereinabove constitutes illegal fee sharing. It is actually no different from a law firm paying other outside vendors or its own employees and paralegals on a periodic basis from earnings that it manages to collect. Consequently, the court concludes that Rule 2016(a), Federal Rules of

14

Bankruptcy Procedure, has not been violated by J&F's and Prommis Solutions' participation in the

Thornes' bankruptcy case.

### C.  11 U.S.C. § 504(a)

While § 504(a) of the Bankruptcy Code expressly prohibits fee sharing, it is not applicable

to this proceeding because the compensation received was not pursuant to § 503(b)(2) or § 503(b)(4)

of the Bankruptcy Code. *See* 4 *Collier on Bankruptcy*, ¶504.02[1][a], at 504-5 (15th ed. rev. 2009):

> The prohibition against fee sharing operates by defining those persons who are
> subject to it.  There are two categories of persons who may not share, or agree to
> share, their fees: those who are compensated pursuant to section 503(b)(2) and those
> who are compensated pursuant to section 503(b)(4).  Section 503(b)(2) allows the
> administrative expenses for compensation under section 330(a), which provides for
> the compensation of a trustee, ombudsman, examiner or the trustee's (or debtor in
> possession's) and committee's professionals employed under sections 327 or 1103,
> as well as reimbursement of their expenses.  Section 503(b)(4) allows administrative
> expenses for the reasonable compensation for legal or accounting services rendered
> to a person whose expense is allowed under section 503(b)(3), a provision generally
> allowing expenses for creditors making substantial contributions to the estate.

### D.  Unauthorized Practice of Law

The plaintiffs have asserted that the paralegal and support employees at Prommis Solutions

were engaged in the unauthorized practice of law when the motion for relief from the automatic stay

was filed and resolved in the Thornes' bankruptcy case.  Without question, the Prommis Solutions'

paralegal, Ruba Franks, assisted in the drafting and filing of the motion and the order, as well as,

communicated with Chase to ascertain information about the underlying indebtedness being serviced

by Chase. However, the motion and order were on template forms prepared by J&F which could not

be modified without the permission of J&F. Karen Maxcy, a licensed Mississippi attorney employed

by J&F, supervised and reviewed the entire process.  Maxcy executed the motion, as well as,

15

approved the order that brought the proceeding to a conclusion. As perceived by this court, the entire

matter was handled in the identical way that it would have been handled had Franks been a paralegal

employed by the J&F law firm. The only difference, which has no substantive impact, is that Franks

was an outsourced paralegal who was employed by Prommis Solutions. With this level of

supervision by a licensed attorney and the use of forms developed by the law firm, to construe that

this procedure is the unauthorized practice of law would place form over substance. The use of

paralegal employees, whether outsourced or "in house," reduces the time that must be devoted by

a licensed attorney, and, in turn, reduces the costs to all parties.

### E. Mississippi Rules of Professional Conduct

The plaintiffs contend that the working arrangement between J&F and Prommis Solutions

violates the Mississippi Rules of Professional Conduct, specifically Rule 5.3 - Responsibilities

Regarding Non-Lawyer Assistants, Rule 5.4 - Professional Independence of a Lawyer, and Rule 5.5 -

Unauthorized Practice of Law. The pertinent portion of these rules are set forth as follows:

**Rule 5.3. Responsibilities Regarding Non-Lawyer Assistants**

With respect to a non-lawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

16

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

### Rule 5.4.  Professional Independence
of a Lawyer

(a) A lawyer or law firm shall not share legal fees with a non-lawyer, except that:

(1) an agreement by a lawyer with a lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

(2) a lawyer who purchases the practice of law of a deceased, disabled or disappeared lawyer may pursuant to the provisions of Rule 1.17, pay to the estate or other representative of that lawyer the agreed-upon purchase price; and

(3) a lawyer or law firm may include non-lawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:

(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;

(2) a nonlawyer is a corporate director or officer thereof; or

(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

17

### Rule 5.5.  Unauthorized Practice of Law

A lawyer shall not:

(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

The Official Comment to this rule provides:

> *The definition of the practice of law is established by law and varies from one jurisdiction to another.  Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons.  Paragraph (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work.  See Rule 5.3. Likewise, it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies.  In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.*

Miss. Rules of Prof'l Conduct R. 5.3-5.5 (2011) (emphasis supplied).

While the Rules of Professional Conduct provide guidance to the court to determine whether there has been impermissible fee splitting or the unauthorized practice of law, the Rules do not provide a basis for civil liability in a cause of action such as that filed by the plaintiffs herein.  To illustrate, a portion of the Scope of the Rules states as follows:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.  Accordingly, nothing in

18

these Rules should be deemed to augment any substantive legal duty of lawyers or
the extra-disciplinary consequences of violating such a duty.

Miss. Rules of Prof'l Conduct, Scope (2011).

Without reiterating all of the factual comments set forth hereinabove, the court would simply

state that, in its opinion, the actions taken by J&F and Prommis Solutions, regarding the filing and

resolution of the motion for relief from the automatic stay in the Thornes' bankruptcy case, do not

violate the provisions of any of the cited Mississippi Rules of Professional Conduct.

VI.

STANDARD FOR SUMMARY JUDGMENTS

Summary judgment is properly granted when pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Bankruptcy Rule 7056; Miss. Bankr. L.R. 7056-1. The court must examine each issue in a light most

favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Ins. Co. of N.*

*Am.*, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis

on which it believes that summary judgment is justified. The nonmoving party must then show that

a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317,

106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291

(5th Cir. 1987), *Putman v. Ins. Co. of N. Am.*, 673 F. Supp. 171 (N.D. Miss. 1987). An issue is

genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that

19

party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

Although the parties dispute how the material factual issues should be considered by the court, they do not dispute the existence of these facts. This is obvious since the plaintiffs, J&F, and the Prommis defendants have all filed motions for summary judgment, requesting the full disposition of this proceeding.

## VII.

## CONCLUSION

Considering the above and foregoing analysis, this court finds that there are no material factual issues remaining in dispute in this adversary proceeding. Consequently, in ruling on the respective motions for summary judgment, the court makes the following conclusions:

1.    The $600.00 attorney fee awarded in the Agreed Order, dated February 3, 2010, which was approved for entry by the Thornes' bankruptcy counsel, the attorney representing the Chapter 13 trustee, as well as, the J&F attorney representing Chase, is reasonable in all respects and comports with due process of law.

2.    Neither J&F nor Prommis Solutions has engaged in the illegal sharing of the $600.00 attorney fee as contemplated by Rule 2016(a), Federal Rules of Bankruptcy Procedure, § 504(a) of the Bankruptcy Code, or the Mississippi Rules of Professional Conduct.

3.    Neither J&F nor Prommis Solutions were engaged in the unauthorized practice of law considering the factual circumstances in this proceeding, since the undisputed facts establish that the Prommis Solutions' paralegal employee and its support staff were adequately supervised by the J&F attorney, and competent services were provided to the client. The fact that the paralegal services were outsourced as opposed to being "in house," has no substantive relevance, and, considering the specific facts of this proceeding, is not offensive to this court.

4.      Because of the foregoing conclusions, the other counts set forth in the plaintiffs' complaint are not well taken.

5.      The motion for summary judgment filed by the defendant, J&F is well taken.

6.      The motion for summary judgment filed by Prommis Holding and Prommis Solutions is well taken.

7.      The motion for summary judgment filed by the plaintiffs is not well taken and will be overruled.

An order, consistent with this opinion, will be entered contemporaneously herewith.

This the 26th day of April, 2012.


                                    DAVID W. HOUSTON, III
                                    UNITED STATES BANKRUPTCY JUDGE